

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 14, 2021

**BY ECF**

Hon. Richard M. Berman
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Alexander Gil*, 20 Cr. 644 (RMB)

Dear Judge Berman:

      The defendant in the above-captioned case is scheduled to be sentenced on Thursday, June 24, 2021 at 9 AM. The stipulated Guidelines range in this case is 97 to 121 months' imprisonment (the "Stipulated Guidelines Range"). The Guidelines Range calculated in the Presentence Investigation Report ("PSR"), dated March 31, 2021, is 108 to 135 months, accounting for the fact that the defendant has 5 criminal history points as a result of being under a criminal justice sentence at the time he committed the charged offense. (PSR ¶¶ 45-47). While the Government acknowledges that the Guidelines Range calculated in the PSR is correct, for the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range is appropriate in this case.

    **I.**    **Offense Conduct**

      Beginning at least in or about January 2020, Alexander Gil ("Gil" or the "defendant") was engaged in a conspiracy to distribute approximately 23 kilograms of cocaine. PSR ¶¶ 12-17. Gil, a citizen of the Dominican Republic, had been previously deported after having been convicted of an aggravated felony for criminal possession of a loaded weapon, among other charges, for which he received a sentence of four years' imprisonment. PSR ¶ 18. Gil had been deported on or about October 2, 2018, and had not received permission to reenter the United States, yet did so and was present in the United States at the time he committed the charged narcotics conspiracy. *Id.* The defendant pleaded guilty pursuant to a plea agreement to illegal reentry, in violation of 8 U.S.C. § 1326(a), and also to the lesser included offense of conspiring to distribute mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(c). The defendant has been in custody since his arrest on or about January 27, 2020.

## II. Discussion

### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence Within the Stipulated Guidelines Range Is Appropriate in This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the defendant and to those similarly situated, and to protect the public from further crimes of the defendant. Given the large quantities of drugs the defendant trafficked, the defendant's attempt to flee when law enforcement identified themselves, PSR ¶ 16, and the defendant's criminal history, a serious sentence is warranted to reflect the seriousness of the offense and promote respect for the law. These considerations weigh in favor of a sentence within the Stipulated Guidelines Range of 97 to 121 months' imprisonment.

First, the crime committed by the defendant is serious. The defendant conspired with others who organized the shipment of 23 kilograms of cocaine, imported into the United States disguised as a legitimate shipment of avocados, as part of a broader narcotics conspiracy.

Specifically, the defendant assisted in ensuring that 23 kilograms of cocaine shipped from overseas was successfully separated from the boxes of avocados used to conceal the narcotics, in order to facilitate the distribution of these dangerous drugs within the United States. The defendant's claim in the sentencing submission that he was merely a lookout, Def. Subm. at 1, 3 (ECF No. 22), is belied by the circumstances of this case. The defendant's two co-conspirators, who were responsible for accepting the shipment of avocados containing the concealed cocaine, rented a box truck, loaded it with the boxes of concealed cocaine, and drove it from the Bronx to Long Island.[1] The defendant's co-conspirators then *waited* several hours for Gil to arrive before moving the box truck to a driveway in order to sort the contents and separate the cocaine (which, unbeknownst to the defendants, had already been seized by law enforcement) from the avocados. There was no need for the defendant's two co-conspirators to wait for the defendant's arrival to accomplish this. Only one co-conspirator entered the box truck to sort through the contents, while a second co-conspirator acted as a lookout. Gil's presence as a so-called lookout was entirely unnecessary to accomplish this task; the only reason Gil's co-conspirators waited is because Gil clearly occupied a position of authority within the conspiracy, and they consequently believed they had to wait for him before beginning the crucial process of sorting the drugs.

Moreover, when approached by law enforcement, Gil attempted to flee through a gap in the fencing surrounding the area where the box truck was parked. Gil was ultimately apprehended, and following his arrest, Gil lied to law enforcement, claiming that he drove from New Jersey to Long Island that day in order to assist in unloading the avocados because he was being paid $100 to do so. The post-arrest statement by Gil was obviously untruthful: the defendant was in possession of $800 cash at the time of his arrest, an unlikely amount for someone to possess if they (as Gil claimed) were willing to travel from New Jersey to Long Island to earn a mere $100 for a one-time odd job. Gil further claimed that, in order to reach Long Island that day, he had taken an Uber from Fort Lee, New Jersey, to the Bronx, New York, to borrow a vehicle so that he could personally drive to Long Island; again, an unlikely course of action given Gil's purported reasons. Gil's incredible explanations further suggest that he was no low-level participant. Gil was not merely a "lookout"; to the contrary, he was supervising the defendants to ensure that the valuable shipment was appropriately handled. The quantities of drugs involved further indicates that he had a position of trust within the conspiracy. It strains credulity to suggest that a low-level, inexperienced conspirator like Gil would be entrusted with completing a multi-kilogram drug transaction of this magnitude. The defendant's role in the conspiracy at the time he was arrested indicates the depth of his experience.

Second, a sentence within the Stipulated Guidelines Range is necessary to deter the defendant and others from engaging in similar conduct, and to promote respect for the law. Drug operations rely on people, like the defendant, who are willing to break the laws of the United States and purchase large quantities of narcotics with cash. By design, these arrangements make it extremely difficult for law enforcement to identify the individuals involved in the conspiracy. And the "easy money" nature of these arrangements make it all the more likely that individuals will get involved in this type of illegal conduct, with little regard for the devastating impact of the distribution of large quantities of cocaine throughout the community. Gil sought to complete a

---

[1] Gil's co-conspirators, Francis Guzman Sanchez and Eduardo Garcia, were separately indicted. *See United States v. Guzman Sanchez et al.*, 20 Cr. 326 (LTS).

narcotics sale that would have contributed to the distribution of large amounts of a serious and dangerous drug. The defendant's conduct must be met with a punishment that deters the defendant and others from future similar conduct, and reflects the seriousness of the offense. Moreover, there is an acute need for specific deterrence and to protect the public from further crimes of the defendant. The defendant was previously convicted in 2013 for shooting a firearm multiple times at another individual sitting in a vehicle at the time. PSR ¶ 44. The defendant was sentenced to four years' imprisonment as a result of his prior conviction, and was ultimately deported. *Id.* Despite receiving a serious sentence for his prior conviction, the defendant was not deterred by his prior encounter with the criminal justice system. Instead, the defendant illegally re-entered and remained in the United States for the purpose of engaging in the charged narcotics conspiracy. Accordingly, the defendant has demonstrated from his persistent efforts to engage in serious criminal conduct just 15 months after he was deported that he continues to pose a danger to the community.

Consequently, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range. A sentence of time served, as requested by the defendant, would not accomplish the purposes of sentencing, would not reflect the seriousness of the charged crime, would not deter the defendant from future criminal conduct, and would not protect the public. Notably, a prior sentence of four years' imprisonment and deportation as a result of his first conviction was insufficient to deter Gil. Clearly, a substantial sentence is required.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 97 to 121 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: /s/
Sarah Mortazavi
Assistant United States Attorney
(212) 637-2520

Cc: Marisa Cabrera (by ECF)